UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Ana Maria Roman

Write the full name of each plaintiff.

_____CV_______________

(Include case number if one has been assigned)

-against-

# COMPLAINT

Do you want a jury trial?

✔ Yes No

Bank of America, National Association

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

# I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

✔ **Federal Question**

**Diversity of Citizenship**

## A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

- **Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 et seq. - disability discrimination and retaliation**
- **New York State Human Rights Law ("NYSHRL"), N.Y. Exec Law § 290 et. seq.**
- **New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.**

## B. If you checked Diversity of Citizenship

### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ______________________________________, is a citizen of the State of
(Plaintiff's name)

______________________________________
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

______________________________________.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, ______________________________, is a citizen of the State of
(Defendant's name)

______________________________

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

______________________________.

If the defendant is a corporation:

The defendant, ______________________________, is incorporated under the laws of

the State of ______________________________

and has its principal place of business in the State of ______________________________

or is incorporated under the laws of (foreign state) ______________________________

and has its principal place of business in ______________________________.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| First name, Last name | **Ana Maria Roman** |
| Street address: | **4311 49th st, apt 3C** |
| County, City | **Sunnyside, Queens** |
| State , Zipcode | **New York, 11104** |
| Telephone number | **207-703-8832** |
| Email address: | **roman-ana@live.com** |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First name, Last name **Bank of America, National Association**

Current job title (or other identifying information)

Current work address **100 North Tryon Street, Suite 170**

County, City **Charlotte**

State **North Carolina**

Zipcode **28202**

## III. STATEMENT OF CLAIM

Place(s) of occurrence: Grace Building, 1114 Avenue of the Americas, New York , 10110

Date(s) of occurrence : January 2025 - September 2025

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

01. Plaintiff Ana Maria Roman began working for Defendant Bank of America, N.A. in April 2018.

02. Throughout her employment, Plaintiff consistently met or exceeded performance expectations and received positive recognition from employees, business partners, and leadership for her work, presentations, career coaching, and contributions. During her employment, Plaintiff successfully transitioned across three different lines of business within Bank of America: Consumer Banking, Wealth Management and Human Resources. **(pages 1-98- performance reviews, recognition, work feedback)**

03. At the time of the events alleged herein, Plaintiff was employed as a Talent Acquisition Consultant on Defendant's Internal Mobility Team, where she served as an Internal Mobility Coach, and worked at Defendant's offices in the Grace Building, 1114 Avenue of the Americas, New York, New York.

04. On November 21, 2024, Plaintiff informed her manager, Mari-Christina McGlinn, **that she was experiencing health concerns and also wanted to do research into mental health. (page 99)**

05. **In mid-January 2025, Plaintiff initiated a request for a Leave of Absence through Sedgwick (pages 219-240)** due to her health condition. During Plaintiff's year-end performance review, her manager informed her that she would not receive a promotion and that she needed to prove herself in Human Resources if she wished to advance. **Concerned that taking leave could negatively affect her career advancement, Plaintiff withdrew her leave request and continued working.**

06. On January 28, 2025, **Defendant,** through Plaintiff's manager, Mari-Christina McGlinn, placed **Plaintiff on an Individual Development Plan ("IDP"). (page 272-276).**

07. On March 11, 2025, Plaintiff's manager prohibited Plaintiff from participating in volunteer career fair events for which Plaintiff had previously registered, citing Plaintiff's placement on the IDP. Plaintiff's manager communicated with the HR partners organizing the events and directed that Plaintiff not participate, further excluding Plaintiff from professional activities and opportunities. (**pages 142-149 & pages 156- 158** & **Emails & Texts w Liza Giuliano - exclusion from professional opps)**

08. **On April 1, 2025, the second business day after Plaintiff returned from a previously approved two-week vacation, Plaintiff's manager issued Plaintiff a Written Warning** and entered formal disciplinary action into Defendant's system, relying in part on previously identified issues that Plaintiff had already corrected. **(page 272- timeline for the disciplinary actions) System recorded the disciplinary action as of 04/13/2025, yet the plaintiff had started the communications with ER immediately after the written warning was given.**

09. **Beginning on April 3, 2025**, Plaintiff contacted Defendant's Employee Relations department, where Johanna Sanchez served as Plaintiff's point of contact. Plaintiff disputed the IDP and subsequent disciplinary action, reported concerns regarding her manager's treatment, and provided detailed documentation of her performance, accomplishments, and positive recognition in support of her position that the disciplinary actions were unwarranted. **(pages 105-141- ER communications)**

10. Between April and June 2025, Plaintiff continued reporting to Employee Relations what she believed to be discrimination and retaliation, including micromanagement, exclusion from professional opportunities, increased workload, and disparate treatment compared with similarly situated coworkers. **(pages 258-265- disparate treatment compared with colleagues).**

11. On April 18, 2025, Plaintiff reported to Defendant's Employee Relations representative Johanna Sanchez that she believed the escalating disciplinary actions against her mirrored the treatment of former colleague **Scott Mealus**. Scott had informed Plaintiff that, after disclosing that he was unwell, he was

placed on an Individual Development Plan and subjected to treatment that he described as demeaning and hostile, which he reported had negatively affected his mental health. (**pages 150-155- Scott's texts**). Plaintiff expressed concern to Employee Relations that she was experiencing a similar pattern of treatment and feared that her employment would likewise be terminated. (**pages 114- 125- ER Communication & Complaints)**

12. During May 2025, Plaintiff continued to meet or exceed performance expectations while repeatedly reporting to Defendant's Employee Relations department that she was being subjected to retaliation, hostile treatment, an increased workload, and treatment that she believed differed from that of similarly situated coworkers. **(pages 127-137)**

13. On May 21, May 23, and June 12, 2025, Plaintiff participated in communications with Employee Relations during which she reported her concerns and provided documentation supporting her complaints, including information regarding her workload, performance metrics, and employee recognition. **(pages 127-137).**

14. **Starting June 20, 2025, Plaintiff sought psychiatric treatment due to worsening anxiety, depression and work-related burnout and was prescribed medication. Plaintiff also participated in multiple psychiatric and psychological treatment sessions during this period. (pages 161- 188- doctor's & therapist notes)**

15. During this period, Plaintiff continued performing her duties and assisting Defendant's employees with career coaching and internal mobility. One such employee, **Pamela Pickett**, repeatedly sought Plaintiff's assistance with an internal career transition and informed Plaintiff that she believed her difficulties obtaining another position were related to her ADA accommodation. **(pages 268-271)** Plaintiff assisted Ms. Pickett with her résumé and Defendant's available internal career resources. While Plaintiff continued performing her duties and assisting Defendant's employees, Plaintiff's manager raised concerns with Employee Relations regarding Plaintiff's assistance to Ms. Pickett and characterized Plaintiff's handling of the matter as a performance concern. Defendant subsequently relied, in part, on that matter in support of its disciplinary actions and its stated reason for terminating Plaintiff for "Unsatisfactory Job Performance." **Plaintiff reached out to employee Pamela Pickett on Linkedin to let her know that unfortunately she won't be able to help out anymore and to share her story with her- but only after she was fired- on September 9th.**

16. On July 18, 2025, Defendant issued Plaintiff a negative mid-year performance review, although Plaintiff's overall performance rating remained "Meets/Meets." The review warned that Plaintiff would receive a "Does Not Meet" year-end rating unless significant improvement was observed, despite Plaintiff's documented performance metrics, employee and business-partner recognition, presentations, and positive feedback that Plaintiff alleges were inconsistent with the criticisms contained in the review. **(page 11 - the negative performance review alongside plaintiff's documented evaluation**, **pages 247-257- plaintiff's performance, page 160- Team Goals)**

17. On July 20, 2025, Plaintiff responded in writing to the performance review and advised Defendant that she believed the review was influenced by her pending Employee Relations complaint and constituted part of the pattern of retaliation she had previously reported. **(page 12- plaintiff's comment on 07/20/25)**

18. **On July 21, 2025, one day after Plaintiff raised those concerns**, Defendant issued Plaintiff a Final Warning, that didn't register in the system until 08/01/2025, yet the plaintiff again contacted ER on 07/23/2025 **(pages 140-141).**

19. On July 23 and July 28, 2025, Plaintiff communicated with Defendant's Employee Relations department and stated that she wished to remain in her position but believed that her manager continued to retaliate against her despite Plaintiff's performance, recognition, and efforts to resolve the issues through internal channels.

20. During August 2025, upon the recommendation of her healthcare provider, Plaintiff requested to use her Purchased Time Off together with previously approved vacation time because of her worsening health condition. Plaintiff also informed Defendant that she was experiencing increased workload demands, was overwhelmed, and was struggling medically. Defendant denied Plaintiff's request and instructed Plaintiff to personally withdraw it from the leave management system rather than denying or canceling it on Defendant's behalf. **(page 191)**

21**.** During early September 2025, Plaintiff again requested that Defendant reconsider its denial of her request to use her Purchased Time Off together with her approved vacation time. **(page 190).** The defendant again denied the request.

22. On September 2, 2025, after Defendant denied her request for additional time off because of **"business needs"(page 191)** , Plaintiff contacted Sedgwick to initiate a Leave of Absence **(page 193-218)** and informed her manager that the work environment was causing severe anxiety, burnout, and fear of retaliation.

23. On September 8, 2025, Plaintiff participated in a meeting with her manager during which Plaintiff reported severe anxiety, burnout, panic attacks, fear of retaliation, and continued concerns regarding her treatment despite her performance. (**pages 241, 242, 243**).

24. On September 9, 2025, one day after Plaintiff again reported her health concerns and fear of retaliation, Defendant terminated Plaintiff's employment by telephone, citing "Involuntary – Unsatisfactory Job Performance." (**pages 244, 245,246- transcript last call, pages 293-304-Transition Agreement, pages 277-292- Separation Agreement**).

25. Following Plaintiff's disclosure of her health condition, requests for medical leave and other health-related time off, and repeated complaints to Employee Relations, Plaintiff alleges that Defendant subjected her to escalating disciplinary actions, denied her requests for leave, and ultimately terminated her employment because of her disability and in retaliation for engaging in protected activity.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, including the adverse employment actions and termination of Plaintiff's employment, Plaintiff suffered loss of employment, wages, benefits, bonuses, career advancement opportunities, and future earning capacity. Plaintiff also suffered significant emotional distress, anxiety, humiliation, embarrassment, mental anguish, and damage to her professional confidence and career. Plaintiff has suffered and continues to suffer economic and non-economic damages as a result of Defendant's conduct.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

**A.** Declare that Defendant violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL");

**B.** Award Plaintiff all back pay, lost wages, lost salary increases, lost bonuses, lost employment benefits, retirement contributions, and all other compensation and benefits that Plaintiff would have received but for Defendant's alleged unlawful conduct;

**C.** Order Defendant to reinstate Plaintiff to her former position or to a substantially equivalent position with the same pay, benefits, seniority, retirement credits, and promotional opportunities, or, if reinstatement is not feasible or appropriate, award front pay in lieu of reinstatement;

**D.** Award compensatory damages for emotional distress, mental anguish, humiliation, inconvenience, loss of enjoyment of life, and other non-economic damages permitted by law;

**E.** Award punitive damages to the fullest extent permitted by applicable law;

**F.** Award pre-judgment and post-judgment interest as permitted by law;

**G.** Award Plaintiff the costs of this action and, to the extent authorized by applicable law, reasonable attorney's fees and litigation expenses;

**H.** Grant such other and further legal or equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

08/12/2026 — Ana Maria Roman

Dated — Plaintiff's Signature

Ana Maria — Roman

First Name — Middle Initial — Last Name

4311 49th st, apt 3C

Street Address

Sunnyside, Queens — New York

County, City — State — Zip Code

207-703-8832 — roman-ana@live.com

Telephone Number — Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

✔ Yes   No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;
2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;
2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;
3. This service does *not* allow you to electronically file your documents;
4. It will be your duty to regularly review the docket sheet of the case.[3]

1 Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

2 You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

3 The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;
2. I have established a PACER account;
3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;
4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;
5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and
6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

______________________________________________

______________________________________________

Roman, Ana Maria
Name (Last, First, MI)

| 4311 49th st, apt. 3C | Sunnyside,Queens | New York | 11104 |
|---|---|---|---|
| Address | City | State | Zip Code |

| 207-703-8832 | roman-ana@live.com |
|---|---|
| Telephone Number | E-mail Address |
| 08/12/2026 | Ana Maria Roman |
| Date | Signature |

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007